UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

VINCENT T. NEELY,

        Plaintiff,

v.

        Case No. 2:24-cv-18

        Hon. Hala Y. Jarbou

UNKNOWN PEDERSON, et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has sought leave to proceed *in forma pauperis*. (ECF No. 2.) Because Plaintiff's financial documents indicate that he cannot afford to pay full filing fee at once, the Court will grant Plaintiff leave to proceed *in forma pauperis*.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's federal claims against Defendants Theut, Slater, and Smith for failure to state a claim. The Court will dismiss Plaintiff's state law claims against

Defendants Theut, Slater, and Smith without prejudice because the Court declines to exercise supplemental jurisdiction over such claims.

The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Pederson and Batho: (1) Plaintiff's official capacity claims against Defendant Batho; (2) Plaintiff's Eighth Amendment claims; and (3) Plaintiff's Fourteenth Amendment procedural due process claims. Plaintiff's First Amendment retaliation claims and Fourteenth Amendment substantive due process claims, as well as his state law claims, asserted against Defendants Pederson and Batho remain in the case.

## Discussion

### I.  Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the following personnel in their official capacities only: Administrative Law Judge Unknown Theut, Hearing Investigator Unknown Slater, and Sergeant Unknown Smith. (Compl., ECF No. 1, PageID.6–7.) Plaintiff sues Correctional Officer Unknown Pederson in his individual capacity. (*Id.*, PageID.6.) In the caption of his complaint, Plaintiff indicates that he is suing Administrative Resident Unit Manager Unknown Batho in his individual capacity, but on the next page, he states that he is suing Defendant Batho in his official capacity. (*Id.*, PageID.5–6.) Given this ambiguity, the Court will construe Plaintiff's complaint as suing Defendant Batho in both capacities.

Plaintiff alleges that on June 15, 2023, Defendant Pederson approached him and said, "Hey Black, I know that you are running a liquor outfit and extorting young white boys." (Compl., ECF No. 1, PageID.8.) Plaintiff told Defendant Pederson that his name was not Black and asked Defendant Pederson to stop calling him that. (*Id.*) Defendant Pederson responded, "Whatever

2

dude," then proceeded to say, "why does inmate Brown look so much like you? I know that you two darkies are controlling the liquor and if you don't tell me where Brown is keeping the liquor, I'm going to put a case on you <u>and</u> Brown for running a liquor operation, <u>and</u> extorting young white boys." (*Id.* (emphasis in original).) Plaintiff told Defendant Pederson that he would be writing a grievance because Defendant Pederson was "accusing him of doing something he did not do." (*Id.*)

Plaintiff alleges that once he submitted his grievance, Defendant Pederson began making threats and conspired with Defendant Batho to "aid the retaliations." (*Id.*) Plaintiff suggests that on June 16, 2023, Defendants Pederson and Batho returned to Plaintiff's cube while Plaintiff was on library detail. (*Id.*, PageID.9.) They told all inmates to leave so that a shakedown could be conducted. (*Id.*) Plaintiff contends that inmates across from his cube saw Defendants Pederson and Batho go into Plaintiff's area of control, dump Plaintiff's property in other areas, and toss other property into two trash containers. (*Id.*, PageID.8–9.) Plaintiff alleges further that Defendant Batho left Plaintiff's area of control, returned with a sledgehammer and plastic bag, and then proceeded to destroy a large area of the wall adjacent to Plaintiff's bed. (*Id.*, PageID.9.) Defendant Pederson then "began grabbing things from his pocket and placed those items in the bag, then put the bag inside the hole created by" Defendant Batho. (*Id.*) Defendants Pederson and Batho then called Defendant Smith to the area to "view what was placed in the wall by them." (*Id.*, PageID.10.) Defendant Smith called Plaintiff over the intercom to return to his cube. (*Id.*) When Plaintiff returned, he was handcuffed by Defendant Smith without knowing why Defendant Smith was doing so. (*Id.*) Plaintiff was then placed in segregation. (*Id.*)

Later that day, Plaintiff was reviewed on two misconduct tickets issued by Defendant Pederson. (*Id.*) The one ticket charged Plaintiff with substance abuse and destruction or misuse of

3

property, and the other ticket charged him with possession of a weapon. (*Id.*) Plaintiff was also charged $175.75 in restitution for the damage to the wall. (*Id.*) Plaintiff contends that Defendant Smith reviewed the misconduct tickets, but that he should not have, explaining that Defendant Smith was acting "under a conflict of interest" when he failed to direct Defendant Pederson to rewrite the misconduct tickets because MDOC policy prohibits "more than one charge on a [misconduct] form." (*Id.*, PageID.10–11.) Defendant Smith also placed Plaintiff on non-bondable toplock status, "which meant no movement, and termination of [Plaintiff's] job." (*Id.*, PageID.11.)

Defendant Slater was assigned as the hearing investigator for Plaintiff's misconduct tickets. (*Id.*) Plaintiff contends that Defendant Slater failed to interview witnesses and failed to ensure that all required procedures were followed, such as the completion of segregation forms, notices of intent, and contraband removal forms. (*Id.*)

Plaintiff appeared before Defendant Theut on June 28, 2023, for a hearing on all the misconduct charges. (*Id.*) Defendant Theut found Plaintiff not guilty on all three charges. (*Id.*) Plaintiff alleges that later that day, Defendant Theut "initiated retaliation" by emailing Defendants Pederson and Batho to inform them that Plaintiff had been found not guilty. (*Id.*) Plaintiff claims that Defendant Batho then made sure that Plaintiff did not get his porter job back. (*Id.*, PageID.12.) Plaintiff also claims that Defendant Slater refused to provide the "discovery package" related to his misconduct tickets because Plaintiff had been found not guilty. (*Id.*)

Based on the foregoing, the Court construes Plaintiff's complaint to assert First Amendment retaliation claims, Eighth Amendment claims, and Fourteenth Amendment due process and equal protection claims. Plaintiff also asserts violations of MDOC policies and procedures and state law. Plaintiff seeks an "immediate injunctive order" directing back pay for

4

no less than $210.00, as well as compensatory, punitive, and nominal damages. (*Id.*, PageID.15–16.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating

federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Section 1983 Claims

#### 1. Official Capacity Claims

As noted *supra*, Plaintiff has sued Defendants Theut, Slater, and Smith in their official capacities only. Plaintiff has also sued Defendant Batho in both his official and personal capacities.

A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

Here, Plaintiff seeks injunctive relief, as well as compensatory, punitive, and nominal damages. Official capacity defendants, however, are absolutely immune from monetary damages.

6

*See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). Plaintiff's official capacity claims for damages will, therefore, be dismissed.

An official capacity action seeking injunctive relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). Importantly, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

Here, Plaintiff's complaint is devoid of any facts suggesting that Defendants Theut, Slater, Smith, and Batho are engaged in any ongoing violations of federal law. Therefore, Plaintiff does not seek relief properly characterized as prospective. *See Ladd*, 971 F.3d at 581. Accordingly, the Court will dismiss Plaintiff's official capacity claims in their entirety. The dismissal of Plaintiff's official capacity claims leaves his personal capacity claims against Defendants Pederson and Batho. The Court discusses those claims below.

**2.   Personal Capacity Claims**

**a.   First Amendment Retaliation**

The Court has construed Plaintiff's complaint to assert that Defendants Pederson and Batho retaliated against him, in violation of the First Amendment, by shaking down Plaintiff's area of control and throwing away his property, issuing a false misconduct, and ensuring that Plaintiff was not reinstated to his institutional job.

In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse

7

action was motivated, at least in part, by the protected conduct. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff explicitly alleges that he filed a grievance concerning Defendant Pederson's accusations that Plaintiff was running a liquor outfit and extorting other inmates. (ECF No. 1, PageID.8.) Plaintiff, therefore, has adequately alleged that he engaged in protected conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000).

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendant's conduct is "capable of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002). Receiving a misconduct can be considered adverse action. *See Thomas v. Eby*, 481 F.3d 434, 441 (6th Cir. 2007); *see also Hill*, 630 F.3d at 474 (holding that "actions that result in more restrictions and fewer privileges for prisoners are considered adverse"); *Scott v. Churchill*, 377 F.3d 565, 572 (6th Cir. 2004) (noting that "the mere potential threat of disciplinary sanctions is sufficiently adverse action to support a claim of retaliation"). Moreover, "the loss of a prison job can, in some circumstances, be deemed an adverse action for purposes of a retaliation claim." *Bradley v. Conarty*, No. 17-2340, 2018 WL 5883929, at *2 (6th Cir. Sept. 13, 2018). Finally, a cell search is also sufficiently adverse where

the search leaves the cell in disarray and results in the confiscation or destruction of materials. *See Bell v. Johnson*, 308 F.3d 594, 606–07 (6th Cir. 2002). Plaintiff, therefore, has adequately set forth facts for purposes of the second prong of his retaliation claims.

The third element of a First Amendment retaliation claim, a retaliatory motive, is easy to allege but it can seldom be demonstrated by direct evidence. Here, Plaintiff alleges that he told Defendant Pederson that he would be filing a grievance concerning Defendant Pederson's accusations on June 15, 2023. (ECF No. 1, PageID.8.) Plaintiff's exhibits indicate he filed his grievance on June 16, 2023. (ECF No. 1-1, PageID.20.) That same day, Defendants Pederson and Batho planted the evidence, conducted the shakedown, and issued Plaintiff the allegedly false misconducts. Moreover, Plaintiff was removed from his job because of the misconducts. In some circumstances, temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). Here, the adverse actions followed closely on the heels of Plaintiff's statement of intent to file a grievance and his actual filing of the grievance.

In sum, Plaintiff has stated plausible First Amendment retaliation claims against Defendants Pederson and Batho that may not be dismissed on initial review.

### b. Eighth Amendment Claims

The Court has construed Plaintiff's complaint to assert various Eighth Amendment claims premised upon Defendants Pederson and Batho's actions.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and

wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act

10

with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

First, Plaintiff's complaint can be construed to assert an Eighth Amendment claim premised upon Defendant Pederson's verbal harassment. However, while unprofessional, allegations of verbal harassment or threats by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment. *Ivey*, 832 F.2d at 955. Nor do allegations of verbal harassment rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Id.* The Court, therefore, will dismiss any Eighth Amendment claims premised upon verbal harassment asserted by Plaintiff.

Plaintiff also appears to take issue with his placement in segregation pending the outcome of his misconduct proceedings. Placement in segregation is a routine discomfort that is "part of the penalty that criminal offenders pay for their offenses against society." *Hudson*, 503 U.S. at 9 (quoting *Rhodes*, 452 U.S. at 347). The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges as a result of administrative segregation cannot establish an Eighth Amendment violation. *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008). Moreover, the filing of a false misconduct, which led to Plaintiff's placement in segregation, does not constitute punishment under the Eighth Amendment. *See Williams v. Reynolds*, No. 98-2139, 1999 WL 1021856, at *2 (6th Cir. 1999); *see also Bruggeman v. Paxton*, 15 F. App'x 202, 205 (6th Cir. 2001). Plaintiff, therefore, cannot maintain an Eighth Amendment claim premised upon his receipt of a false misconduct and temporary placement in segregation.

11

Finally, Defendants Pederson and Batho's search of Plaintiff's area of control, even though it left Plaintiff's area in disarray and resulted in the loss of property, does not rise to the level of cruel and unusual punishment that violates the Eighth Amendment. *See Roper v. Johnson*, No. 2:19-cv-2061, 2020 WL 224601, *2–3 (N.D. Ohio Jan. 15, 2020) (dismissing prisoner's claim that search of his cell and destruction of his property constituted cruel and unusual punishment).

In sum, Plaintiff fails to allege any facts regarding Defendants Pederson and Batho's behavior from which the Court could infer an Eighth Amendment violation. Plaintiff's Eighth Amendment claims against these Defendants will, therefore, be dismissed.

### c.  Fourteenth Amendment Claims

#### (i)  Procedural Due Process—False Misconducts

The Court has construed Plaintiff's complaint to assert a Fourteenth Amendment procedural due process claim against Defendants Pederson and Batho premised upon the issuance of false misconducts to Plaintiff.

A prisoner's ability to challenge a prison misconduct conviction depends on whether the conviction implicated any liberty interest. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. at 484, 487. Under MDOC Policy Directive 03.03.105, ¶ C (eff. Apr. 18, 2022), a class I misconduct is a "major" misconduct and class II and III misconducts are "minor" misconducts. The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a class I misconduct. *Id*. ¶ DDDD.

Plaintiff's complaint and exhibits, however, clearly indicate that Plaintiff was found not guilty of all three misconduct tickets. Plaintiff, therefore, received due process of law with respect

12

to these misconducts. "Due process of law requires only that the person have the opportunity to convince an unbiased decision maker that he has been wrongly or falsely accused or that the evidence against him is false." *Onumonu v. Mich. Dep't of Corr.*, No. 1:21-cv-33, 2021 WL 972809, at *3 (W.D. Mich. Mar. 16, 2021). Accordingly, any procedural due process claims against Defendants Pederson and Batho premised upon the issuance of the misconducts will be dismissed.[1]

### (ii) Procedural Due Process—Placement in Segregation

Plaintiff takes issue with his placement in segregation pending misconduct proceedings.[2] (Compl., ECF No. 1, PageID.10.) However, confinement in segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010). Courts will consider the

---

[1] In his complaint, Plaintiff also mentions a "denial of discovery," claiming that Defendant Slater refused to give Plaintiff the "discovery package" because he was found not guilty of the misconduct. (Compl., ECF No. 1, PageID.12.) MDOC Policy Directive 03.03.105 provides that if a prisoner is found not guilty, "a copy of the Misconduct Report, Class I Misconduct Hearing Report, and Hearing Investigation Report, if any, shall be retained by the Hearing Investigator to assist in responding to requests for rehearing and litigation." *See* MDOC Policy Directive 03.03.105 ¶ GG (eff. Apr. 18, 2022). After the hearing, a prisoner "may request and shall be provided a copy of their hearing investigation packet, including the Hearing Investigation Report, any written witness statements, screening and assessment forms, and copies of photographs that have not been determined by the ALJ to be confidential." *Id.* ¶ HH.

To the extent Plaintiff faults Defendant Slater for not complying with MDOC Policy Directive 03.03.105, as discussed *infra*, § 1983 does not provide redress for violations of prison policy. In any event, as set forth in *Wolff v. McDonnell*, 418 U.S. 539 (1974), due process requires only that the prisoner receive, *inter alia*, a written decision regarding the disciplinary result. *Wolff*, 418 U.S. at 563–66. Plaintiff clearly received a copy of that report, as he was able to attach a copy to his complaint as an exhibit.

[2] Because Plaintiff was found not guilty of the misconduct, and because he asserts that the misconduct was a major misconduct, it is likely that Plaintiff was temporarily confined in segregation pending his hearing. *See* MDOC Policy Directive 03.03.105 ¶¶ R, S, & T (eff. Apr. 18, 2022).

13

nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th Cir. 2008). Generally, periods of segregation lasting several years or more have been found to be atypical and significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest); *Harden-Bey*, 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, i.e., three years without an explanation from prison officials, implicates a liberty interest).

Here, Plaintiff alleges that he was placed in segregation on June 16, 2023. He was found not guilty of the misconduct following a hearing held on June 28, 2023. (ECF No. 1-7, PageID.56.) Based on Plaintiff's facts and allegations, it appears that the duration of Plaintiff's placement in segregation lasted for about two weeks. That is far less than the several years or more at issue in *Selby*, *Harris*, and *Harden-Bey*. Plaintiff, therefore, cannot maintain procedural due process claims against Defendants Pederson and Batho premised upon his brief stay in segregation.

### (iii)     Procedural Due Process—Loss of Job

Plaintiff also contends that he lost his institutional job as a result of the false misconducts. He alleges that Defendant Batho ensured that he was not reinstated to the position after Plaintiff was found not guilty. However, "no prisoner has a constitutional right to a particular job or to any job." *See Ivey*, 832 F.3d at 955; *see also Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (discussing that prisoners have no constitutional right to rehabilitation, education, or jobs); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (holding that there is no constitutional right to prison employment). Consequently, any Fourteenth Amendment due process claims against Defendants Pederson and Moore premised upon Plaintiff's loss of his job will also be dismissed.

### (iv)   Procedural Due Process—Loss of Property

Plaintiff also alleges that Defendants Pederson and Batho threw away some of his property when they conducted a shakedown of Plaintiff's area of control. To the extent that Plaintiff alleges that Defendants Pederson and Batho deprived him of property without due process of law, this claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, an individual deprived of property by a "random and unauthorized act" of a state employee cannot maintain a federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, while real, is not "without due process of law." *Id.* at 537. This doctrine applies to both negligent and intentional deprivations of property, as long as the deprivation was not pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Plaintiff must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). The Sixth Circuit has noted that a prisoner's failure to sustain this burden requires dismissal of his § 1983 due process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Here, Plaintiff fails to allege that his state post-deprivation remedies are inadequate. Plaintiff has available to him numerous state post-deprivation remedies. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MDOC Policy Directive 04.07.112, ¶ b (eff. Dec. 12, 2013). Moreover, aggrieved prisoners may submit claims for property loss of less than $1,000.00 to the State Administrative Board. Mich. Comp. Laws. § 600.6419; MDOC Policy Directive 03.02.131 (eff. Oct. 21, 2013). Finally, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims

15

"against the state and any of its departments or officers." Mich. Comp. Laws § 600.6419(1)(a) (eff. Nov. 12, 2013). The Sixth Circuit has specifically held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff alleges no reason why a state-court action would not afford him complete relief for the deprivations, either negligent or intentional, of his personal property.

### (v) Substantive Due Process

Plaintiff's complaint can also be construed to assert Fourteenth Amendment substantive due process claims against Defendants Pederson and Batho premised upon the issuance of false misconducts.

"Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)). With respect to an allegedly falsified misconduct report, the Sixth Circuit has held that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power." *Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988), *overruled in other part by Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999).

Here, Plaintiff explicitly alleges that Defendants Pederson and Batho planted evidence in Plaintiff's area of control and that they did so because Plaintiff threatened to write a grievance

16

against Defendant Pederson. Given Plaintiff's allegations, his Fourteenth Amendment substantive due process claims against Defendants Pederson and Batho may not be dismissed on initial review.

### (vi) Equal Protection

Plaintiff vaguely alleges that he was subjected to discrimination. (Compl., ECF No. 1, PageID.5.) The Court has construed Plaintiff's reference to assert Fourteenth Amendment equal protection claims.

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim, Plaintiff must show "intentional and arbitrary discrimination" by the state; that is, he must show that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Further, "'[s]imilarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)).

Here, Plaintiff fails to allege any facts to suggest that he was treated differently than others, let alone that the others were similarly situated. Instead, any allegations of discriminatory treatment are wholly conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

17

Furthermore, even viewing Plaintiff's equal protection claim as a class-of-one claim, the Court would reach the same conclusion because Plaintiff's equal protection claims are wholly conclusory and he has alleged no facts that plausibly suggest that his equal protection rights were violated. Accordingly, any intended Fourteenth Amendment equal protection claims will be dismissed.

### B.   Violations of MDOC Policy and Procedure, and State Law Claims

Plaintiff also asserts violations of various MDOC policies and procedures throughout his complaint, as well as a state law tort claim. Claims under § 1983, however, can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law or prison policy. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994); *see also Laney v. Farley*, 501 F.3d 577, 580–81 & n.2 (6th Cir. 2007). Additionally, courts routinely have recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney*, 501 F.3d at 581 n.2; *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Sweeton*, 27 F.3d at 1164; *Smith v. Freland*, 954 F.2d 343, 347–48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992). Plaintiff's allegations that Defendants violated MDOC policy and procedures or state law, therefore, fail to raise cognizable federal constitutional claims.

Plaintiff may be seeking to invoke this Court's supplemental jurisdiction over state law claims. Ordinarily, where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction, and the federal claims are dismissed prior to trial, the court will dismiss the remaining state law claims. *See Experimental Holdings, Inc. v. Farris* 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims." (citing *United Mine Workers of Am. v. Gibbs*, 383

U.S. 715, 726 (1966))); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotations omitted)). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Because Plaintiff's federal claims against Defendant Theut, Slater, and Smith have been dismissed, the Court will dismiss Plaintiff's state law claims against these individuals without prejudice. Because Plaintiff's federal claims against Defendants Pederson and Batho remain pending, the Court will exercise supplemental jurisdiction over Plaintiff's state law claims against them.

## **Conclusion**

The Court will grant Plaintiff leave to proceed *in forma pauperis*. Further, having conducted the review required by the PLRA, the Court determines that Plaintiff's federal claims against Defendants Theut, Slater, and Smith for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will dismiss Plaintiff's state law claims against Defendants Theut, Slater, and Smith without prejudice because the Court declines to exercise supplemental jurisdiction over such claims.

The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Pederson and Batho: (1) Plaintiff's official capacity claims against

19

Defendant Batho; (2) Plaintiff's Eighth Amendment claims; and (3) Plaintiff's Fourteenth Amendment procedural due process claims. Plaintiff's First Amendment retaliation claims and Fourteenth Amendment substantive due process claims, as well as his state law claims, asserted against Defendants Pederson and Batho remain in the case.

An order consistent with this opinion will be entered.

Dated: March 29, 2024                    /s/ Hala Y. Jarbou
                                         HALA Y. JARBOU
                                         CHIEF UNITED STATES DISTRICT JUDGE