UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

VINCENT T. NEELY #308258,                          Case No. 2:24-cv-18

               Plaintiff,                     Judge Hala Y. Jarbou
                                    Chief U.S. District Judge

   v.

UNKNOWN PEDERSON, *et al.*,

               Defendants.
_____/

## REPORT AND RECOMMENDATION

### I. Introduction

This Report and Recommendation (R&R) addresses Defendants Jeromy Pederson and Christopher Batho's motion for summary judgment due to Plaintiff's failure to exhaust administrative remedies (ECF No. 12), Plaintiff's motion for partial summary judgment arguing that Defendants failed to raise an adequate defense (ECF No. 17), as well as Defendants' motion to strike Plaintiff's sur-reply to this motion (ECF No. 23).[1]

State prisoner Vincent T. Neely filed a complaint under 42 U.S.C. § 1983 alleging that the five named Defendants – Administrative Law Judge (ALJ)

_____

[1] Neely responded to the Defendants' motion for summary judgment (ECF No. 14) and the Defendants replied (ECF No. 21). But then Neely filed a sur-reply (ECF No. 22) without leave of court to do so.

Unknown Theut,[2] Hearing Investigator Unknown Slater, Sergeant Unknown Smith, Corrections Officer (CO) Unknown Batho, and CO Unknown Pederson – violated his First, Eighth, and Fourteenth Amendment rights.  (ECF No. 1.)  Neely also alleges violations of state tort law.  (*Id.*)

In an opinion dated March 29, 2024, the Court dismissed for failure to state a claim Neely's federal claims against Defendants Theut, Slater, and Smith for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court also dismissed Neely's state law claims against Defendants Theut, Slater, and Smith without prejudice, declining to exercise supplemental jurisdiction over such claims.  The Court also dismissed, for failure to state a claim, the following claims against remaining Defendants Pederson and Batho: (1) Plaintiff's official capacity claims against Defendant Batho; (2) Plaintiff's Eighth Amendment claims; and (3) Plaintiff's Fourteenth Amendment procedural due process claims.

At this point, Neely's First Amendment retaliation claims, Fourteenth Amendment substantive due process claims, and his state law claims, asserted against Defendants Pederson and Batho remain in the case.

Neely says that on the night of June 15, 2023, CO Pederson approached him and said, "Hey Black, I know that you are running a liquor outfit and extorting young white boys."  (ECF No. 1, PageID.8.)  Neely replied that "his name, 'is not Black', and that he would like P[ederson] to: 'stop calling [him] that.'"  (*Id.*)  CO Pederson

---

[2]    Documents in the record refer to Defendant Theut by multiple titles including Hearing Officer Theut and ALJ Theut.  For consistency, Defendant Theut will be referred to as ALJ Theut in this Report and Recommendation.

allegedly said, "[W]hatever dude…why does inmate Brown look so much like you? I know that you two darkies are controlling the liquor and if you don't tell me where Brown is keeping the liquor, I'm going to put a case on you <u>and</u> Brown for running a liquor operation, <u>and</u> extorting young white boys."  Neely told CO Pederson he would write a grievance "for accusing him of doing something he did not do." (*Id.*)

Neely alleges that once he filed the grievance, CO Pederson "began making threats" against him. (*Id.*)  Neely says that CO Pederson then conspired with CO Batho to retaliate against him. (*Id.*)  Neely asserts that COs Pederson and Batho prevented his grievance from being properly processed and addressed by the Grievance Coordinator. (*Id.*)

On June 16, 2023, other inmates allegedly observed COs Pederson and Batho enter his bed area and toss the area, throwing some property into other areas of control and throwing some property into trash containers. (*Id.*, PageID.9.)  Neely alleges that CO Batho then left the bed area and returned with a sledgehammer and a plastic bag. (*Id.*)  CO Batho used the sledgehammer to create a large hole in the wall adjacent to his bed. (*Id.*)  CO Pederson removed items from his own pocket, placed those items in the plastic bag CO Batho brought, and placed the plastic bag into the hole CO Batho created. (*Id.*)  Neely says that COs Pederson and Batho did not immediately issue Misconduct Reports (MRs); instead, they called Sergeant Smith to examine the contents of the wall. (*Id.*, PageID.10.)

Sergeant Smith commenced segregation procedures, calling Neely back to his bed area over the facility's intercom system. (*Id.*)  Neely was handcuffed when he

returned.  (*Id.*)  While he was in segregation, Neely asserts he did not have access to records, a Notice of Intent (NOI), or an MR.  (*Id.*)  Neely asserts that it was not until later on June 16th that he received two MR tickets from CO Pederson for substance abuse, destruction of property, and possession of a weapon.  (*Id.*)  Neely was required to pay restitution for the hole CO Batho created.  (*Id.*)  During his investigation of the MR tickets, Sergeant Smith placed Neely on non-bondable toplock status which resulted in Neely's termination from his place of employment.  (*Id.*, PageID.11.)

While awaiting his hearing on the tickets, Neely states that Investigator Slater failed to conduct a thorough investigation or issue a comprehensive report to ALJ Theut.  (*Id.*)  Neely alleges that Slater failed to interview witnesses and verify that proper procedure was followed for segregation.  (*Id.*)  In his hearing on June 28, 2023, Theut found Neely not guilty of the misconduct alleged.  (*Id.*)  Neely asserts that following the hearing, Theut emailed COs Pederson and Batho to inform them of the verdict.  (*Id.*) Neely says that following the verdict, CO Batho prevented him from being rehired at his previous place of employment.  (*Id.*, PageID.12.)

Neely says that he made several requests to Church for records related to his misconduct hearing, to be moved back to his previous housing unit, and to return to his employment before he filed a grievance.  (*Id.*)  Neely states that Investigator Slater told him on July 5, 2023, that he would not receive documents from his hearing because he was found not guilty.  (*Id.*)  Neely states that when he learned he also would not be eligible to get his job back or backpay, he decided to file a third grievance. (*Id.*, PageID.13.)

4

Because Defendants Theut, Slater, and Smith have been dismissed from the case, only Defendant COs Pederson and Batho move for summary judgment.  (ECF No. 12.)  The COs argue that Neely did not exhaust his administrative remedies by naming Pederson or Batho in a misconduct hearing or in a properly exhausted grievance through Step III of the MDOC grievance process.

A review of the records before the Court indicates that Neely filed three grievances and attended one misconduct hearing.  (ECF No. 1.)  The record indicate that Neely filed only one grievance concerning the conduct of Pederson and Batho, but that he failed to exhaust this grievance.  The records also indicate that Neely failed to discuss the conduct of Pederson or Batho during his misconduct hearing.  In the opinion of the undersigned, Neely failed to exhaust his administrative remedies against COs Pederson and Batho.  Therefore, it is respectfully recommended that the Court grant the motion for summary judgment by COs Pederson and Bathos and dismiss the remaining claims in the case.

## II.  Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient

disagreement to require submission to a jury[3] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III.  Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove.  *Jones v. Bock*, 549 U.S. 199, 212-16 (2007).  "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that

---

3    The Seventh Amendment does not always require courts to submit factual disputes about exhaustion to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015).  If the factual disputes about exhaustion do not overlap with the merits of the plaintiff's substantive claims, then the court may conduct a bench trial to resolve the exhaustion issue. *Richards v. Perttu*, 96 F.4th 911, 923 (6th Cir. 2024), *cert. granted*, No. 23-1324, 2024 WL 4394132 (U.S. Oct. 4, 2024).  In a bench trial on exhaustion, the defendants must show that the plaintiff failed to exhaust his administrative remedies by a preponderance of the evidence. *Willey*, 789 F.3d at 677 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)) ("Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence.").

the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process

through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id*. at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id*. (quoting *Booth*, 532 U.S. at 737*).* And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id*. When institutions provide adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

The most common procedure through which a prisoner in MDOC custody exhausts his administrative remedies is the grievance procedure set forth in Michigan Department of Corrections (MDOC) Policy Directive 03.02.130 (effective on March 18, 2019). According to the Policy Directive inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id*. at ¶ Q. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted

oral resolution.  *Id.* at ¶¶ Q, W.  The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent.  *Id.* at ¶ Y. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely.  Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included."  *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due.  *Id.* at ¶ DD.  The respondent at Step II is designated by the policy.  *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form.  *Id.* at ¶¶ HH.  The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due.  *Id.*  The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director.  *Id.* at ¶ II.

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required.  It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir.

9

2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

However, where other administrative remedies are available, the prisoner is required to exhaust those available remedies prior to filing a federal lawsuit. For example, where an inmate claims that he received a retaliatory false misconduct, whether a Class I misconduct or a Class II or III misconduct[4], the inmate must first raise the issue during the Misconduct Hearing. *Siggers v. Campbell*, 652 F.3d 681, 693-94.  If the inmate is claiming to have received a retaliatory Class I misconduct, he or she must then must "file a motion or application for rehearing [of his misconduct conviction] in order to exhaust his or her administrative remedies before seeking judicial review of the final decision or order." Mich. Comp. Laws § 791.255(1); *see also*

---

[4]    Violations of written rules within the MDOC are classified as either Class I, Class II or Class III misconducts. Class I consists of the most severe violations, and Class III consists of the least severe.  While Class I misconducts are considered "major" misconducts and are "subject to all hearing requirements set forth in MCL 791.252", Class II and III misconducts are considered "minor" misconducts and are "subject to all requirements currently set forth in Department Administrative Rules and policy directives for 'minor' misconducts."  MDOC Policy Directive (PD) 03.03.103 ¶ B (eff. date 07/01/18).

*Siggers*, 652 F.3d at 693-94.  Alternatively, if the inmate is claiming to have received a retaliatory Class II or III misconduct, he or she must file an appeal based on retaliation.  MDOC PD 03.03.105 ¶¶ UUU-XXX; *see also Jones v. Heyns*, 2014 U.S. Dist. LEXIS 55712 at *13-17 (W.D. Mich. Jan. 28, 2014).

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit.  *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010).  The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief.  *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process.").  An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits.  *See id*. at 325.   We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court."  *Id*. at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[5]

### IV.  Analysis

---

[5]    In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints."   *Id*. at 596.  For example, grieving a doctor about his failure to give cardiac catheterization did not grieve the claim that the doctor erred by not prescribing Ranexa.

Defendants argue Neely did not exhaust any of the claims asserted in his complaint. (ECF No. 12.) Defendants assert, first, that Neely failed to exhaust any claims through grievances because he did not pursue any grievances relating to the claims in his complaint through Step III of the MDOC's grievance process. (ECF No. 13, PageID.144.) Defendants also contend that Neely failed to exhaust claims relating to the issuance of misconduct tickets because he did not address claims of retaliation or the falsity of the tickets in the documents submitted before the misconduct hearing or during the misconduct hearing itself. (*Id.*, PageID.145.) Neely argues in response that he exhausted administrative remedies available to him or was thwarted from doing so.[6] (ECF No. 14.)

## A. First Amendment Retaliation

In his complaint, Neely asserts that COs Pederson and Batho retaliated against him, in violation of the First Amendment, when they shook down his area of

---

[6]     Neely asserts in his response that he was thwarted from exhausting his administrative remedies. (ECF No. 14.) While Neely's response is verified according to the parameters of 28 U.S.C. § 1746, it fails to establish Neely's personal knowledge of the statements therein. *See* Fed. R. Civ. P. 56(c)(4). Neely states "he will never know" if prison officials withheld grievances because he "only has knowledge of those grievances…enter[ed] into the system." (ECF No. 14, PageID.174.) He says prison officials "went-back-into the system" and deleted the Grievance Identifier Number for Grievance 1 to "mislead [the] Court." (*Id.*, PageID.177.) Neely thus concludes he "was thwarted from whatever action was required to log" Grievance 1. (*Id.*) Neely's statements fail to establish personal knowledge of thwarting and are conclusory in nature. We must disregard Neely's allegations of thwarting because they were made without the Plaintiff's personal knowledge. *See Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000) (citing *Wiley v. United States,* 20 F.3d 222, 226 (6th Cir.1994)).

control, threw away his personal property, issued two false misconduct tickets, and ensured he was not rehired at his place of employment.  (ECF No. 1.)

One of the purposes of proper exhaustion is to alert prison officials to problems within their facilities.  *Nussle*, 534 U.S. at 525.  To properly exhaust grievable claims, one must utilize all steps that the agency holds out and do so properly.  *Ngo*, 548 U.S. at 90.  Grievable claims are governed by the administrative process laid out in MDOC P.D. 03.02.130, which requires the grievant to appeal their grievance from Step I to a Step III appeal to exhaust their claim.

Claims related to misconduct hearings, however, are considered non-grievable. *See Ayotte v. Stemen*, No. 15-13826, 2019 WL 2219739, at *5 (E.D. Mich. Feb. 27, 2019), *R&R adopted*, 2019 WL 1349607 (E.D. Mich. Mar. 26, 2019).  "Instead, a plaintiff 'shall file a motion or application for rehearing in order to exhaust his or her administrative remedies before seeking judicial review of the final decision or order.'" *Id.* (citing Mich. Comp. Laws § 791.255(1)).  A prisoner must make a request for rehearing within thirty days after the final decision or order is issued.  *See id.* Where a prisoner claims that a prison official issued a misconduct ticket for a retaliatory purpose, the prisoner must raise that claim during the first misconduct hearing related to that ticket or the prisoner may not use the claim to request a rehearing.  *See Siggers*, 652 F.3d at 693-94.  Plaintiffs that fail to raise their retaliation claim at the misconduct hearing have not properly exhausted their claim. *See Harris-Bey v. Alcodray*, 2017 WL 3124328, at *4 (E.D. Mich. 2017).

In the rare circumstance where a prisoner shows that administrative procedure was unavailable, "he is not automatically absolved from the PLRA's exhaustion requirement." *Lamb v. Kendrick*, 52 F.4th 286, 293 (6th Cir. 2022) (citing *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015)). The Sixth Circuit requires inmates to make "affirmative efforts to comply with the administrative procedures before analyzing whether the facility rendered these remedies unavailable." *Lee*, 789 F.3d at 677 (quoting *Napier v. Laurel Cnty.*, 636 F.3d 218, 223 (6th Cir. 2011)). "When a prisoner makes affirmative efforts to comply but does not succeed, we analyze whether those efforts to exhaust were sufficient under the circumstances." *Id.* (quoting [*Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011)]) (internal quotation marks omitted).

The record shows that COs Pederson and Batho issued two MRs concerning Neely on June 16, 2023. (ECF No. 1-3, PageID.27; ECF No. 1-4, PageID.29.) The COs noted that "[d]uring a routine shakedown" of Neely's area of control, they discovered a hole in the wall containing two sharpened metal rods and a clear plastic bag full of fermenting brownish liquid. (ECF No. 1-3, PageID.27; ECF No. 1-4, PageID.29.) The contents of those MRs are shown below:



| Prisoner Number: 308258 | Prisoner Name: Neely | | | Facility Code: KCF | Lock: B-2-59 | Violation Date: 06/16/23 |
|---|---|---|---|---|---|---|
| Time and Place of Violation: 1303 Bottom Right Side of Bunk B-2-59/B-2-60 | | | Contraband Removal Record Provided to Prisoner? ☒ Yes    Date  02/08/2021 | | ☐ N/A | |
| Misconduct Class: ☒ I  ☒ II  ☐ III | | Charge(s): (Substance Abuse) (Destruction or Misuse of Property) | | | | |
| Describe Violation (If contraband involved, describe in detail; identify any other employee witnesses): During a routine shakedown of Prisoner Neely 308258 (B-2-59) area of control I found a hole in the wall which contained a clear plastic bag filled with approximately 1 and a half gallons of a brownish liquid in a state of fermentation and smelling of intoxicants. Prisoner Neely was identified by his MDOC ID card and B-Unit master count board. Restitution is warrented for the repair of the wall, and per maintenance Supervisor Woods the cost for the repair is $157.75. Pictures of the wall were taken and attached to the ticket to be used as evidence. | | | | | | |
| Reporting Staff Member's Name (Print) C/O Pederson | | Reporting Staff Member's Signature | | Date and Time Written 06/16/23 1430 | | |

(ECF No. 1-3, PageID.27.)

| Prisoner Number: 308258 | Prisoner Name: Neely | | | Facility Code: KCF | Lock: B-2-59 | Violation Date: 06/16/2023 |
|---|---|---|---|---|---|---|
| Time and Place of Violation: 1303 Bottom Right Side of Bunk B-2-59/B-2-60 | | | Contraband Removal Record Provided to Prisoner? ☐ Yes    Date | | ☐ N/A | |
| Misconduct Class: ☒ I  ☐ II  ☐ III | | Charge(s): Possession of a Weapon | | | | |
| Describe Violation (If contraband involved, describe in detail; identify any other employee witnesses): During a routine shakedown of Prisoner Neely 308258 (B-2-59) area of control I found a hole in the wall which contained two 7 inch metal rods, both sharpened to a point and one has a handle made of rubber hands and cloth. These are considered weapons in a prison setting. Prisoner Neely was identified by his MDOC ID card and B-Unit master count board. Pictures of the weapons were taken and attached to the ticket to be used as evidence. | | | | | | |
| Reporting Staff Member's Name (Print) C/O Pederson | | Reporting Staff Member's Signature | | Date and Time Written 06/16/2023 1452 | | |

(ECF No. 1-4, PageID.29.)

Later on June 16, 2023, Sergeant Smith placed Neely on "non-bond toplock status," confining him to his room.  (ECF No. 1-6, PageID.54.)  Smith noted that the status was pending a hearing on a Major Misconduct report of possession of a weapon. (*Id.*)  While on toplock, Neely was not permitted to go to his work assignment.  (*Id.*)

The record reflects that, despite alleging otherwise in his complaint, Neely did not file a grievance concerning COs Pederson and Batho until June 19, 2023.  (ECF No. 1, PageID.8; ECF No. 1-1, PageID.20-21.)  This Step I grievance was not assigned a grievance number and will be referred to here as Grievance 1.  (ECF No. 1-1, PageID.20-21.)  In Grievance 1, Neely notes that he attempted to resolve the issue by

speaking to CO Pederson before filing the grievance.  (*Id.*)  Neely alleges that CO

Pederson used racist language and accused him of running a liquor operation.  (*Id.*)

When Neely stated he would grieve CO Pederson, Neely says that the CO then

planted evidence in his cubicle and wrote Neely two false misconduct tickets.  (*Id.*)

Portions of Grievance 1 are shown below:



MICHIGAN DEPARTMENT OF CORRECTIONS
**PRISONER/PAROLEE GRIEVANCE FORM**

Date Received at Step I _____    Grievance Identifier: | | | | | |

**Be brief and concise in describing your grievance issue.  If you have any questions concerning the grievance procedure, refer to PD 03.02.130 and OP 03.02.130 available in the prison Law Library.**

| Name (print first, last)<br>VINCENT, NEELY | Number<br>300258 | Institution<br>KCF | Lock Number<br>F-2-73 | Date of Incident<br>6-16-23 | Today's Date<br>6-19-23 |

What attempt did you make to resolve this issue prior to writing this grievance?  On what date? _6-19-23_
If none, explain why.   THE GRIEVANT SPOKE TO C/O PEDERSON

. . . .

**RESOLVE:**

ON 6-15-23 THE GRIEVANT SPOKE TO C/O PEDERSON.

THIS GRIEVANCE IS AGAINST C/O PEDERSON, RUM BATHO, WARDEN BROWN, ADW STOREY, C/O PEDERSON'S IMMEDIATE SUPERVISOR'S (SERGEANTS, LIEUTENANTS, ETC.) WHO MAY HAVE CONSPIRED THROUGH ABDICATION AND/OR ADMINISTRATIVE DELEGATION, TO ADEQUATELY TRAIN C/O PEDERSON. ON 6-15-23, THE GRIEVANT ASKED C/O PEDERSON COULD HE PLEASE STOP REFERRING TO HIM AS BLACK AND QUIT ACCUSING HIM OF RUNNING A LIQUOR OPERATION WITH INMATE BROWN WHO LOCKS IN B-2-53, JUST BECAUSE BOTH THE GRIEVANT AND INMATE BROWN ARE DARK COMPLECTED AFRICAN-AMERICAN MEN, TO NO AVAIL.

**REASON:**

THIS GRIEVANCE IS FOR MALFEASANCE, FALSIFYING DOCUMENTS IN FURTHERANCE OF RETALIATION, STAFF CORRUPTION, IN VIOLATION OF STATE AND FEDERAL LAW, CONST. AM. 1ST, 8TH AND 14TH. ON 6-15-23 DURING 3RD SHIFT, THE GRIEVANT WAS ACCOSTED BY C/O PEDERSON WHO TOLD THE GRIEVANT, "WHY ARE BOTH OF YOU GUYS NAMED BLACK RUNNING A LIQUOR OPERATION IN THIS UNIT AND WHY DOES INMATE BROWN LOOK SO MUCH LIKE YOU?" THE GRIEVANT TOLD HIM THAT HIS NAME WAS NOT BLACK, HIS NAME IS NEELY AND COULD HE PLEASE STOP CALLING HIM BLACK. C/O PEDERSON RESPONDED BY TELLING THE GRIEVANT, "WELL IF YOU DON'T TELL ME WHERE INMATE BROWN IS KEEPING HIS LIQUOR, I'M GOING TO PUT A CASE ON YOU AND BROWN FOR RUNNING A LIQUOR OPERATION AND EXTORTING YOUNG WHITE GUYS." THE GRIEVANT IMMEDIATELY INFORMED C/O PEDERSON THAT HE WOULD WRITE A GRIEVANCE ON HIM TO INFORM THE ADMINISTRATION THAT HE WAS HARASSING HIM AND MIXING HIM UP WITH ANOTHER INMATE AND WHAT HE ASSUMED ABOUT THE GRIEVANT AND THE INMATE, SIMPLY BECAUSE THEY WERE AFRICAN-AMERICAN. DESPITE THE GRIEVANT WARNING C/O PEDERSON THAT HE WOULD REPORT HIS ILL INTENT TO HIS SUPERIORS, C/O PEDERSON PROCEEDED (UNDER MANDATE) ON THE FOLLOWING SHIFT TO PLANT TWO (2) METAL RODS SHARPENED AS WEAPONS AND APPROX. 1 AND A HALF TO 2 GALLONS OF A BROWNISH, FERMENTED LIQUID, ALSO KNOWN AS SPUD-JUICE IN AN AREA C/O PEDERSON ASSUMED WAS THE GRIEVANT AREA OF CONTROL. THESE ITEMS WERE PLANTED IN THE WALL AFTER C/O PEDERSON AND RUM BATHO BROUGHT A SLEDGE-HAMMER INTO THE GRIEVANTS CUBICLE AND BEAT OUT A LARGE HOLE IN THE WALL WITH THE SLEDGE-HAMMER. THE SLEDGE-HAMMER WAS USED TO OBFUSCATE C/O PEDERSON PLANTING THE WEAPONS AND THE SPUD-JUICE. PROOF THAT C/O PEDERSON PLANTED THE CONTRABAND WAS THE FACT THAT HE TOLD THE GRIEVANT WHAT HE PLANNED FOR HIM AND INMATE BROWN. BASED ON THESE MALICIOUS TACTICS, THE GRIEVANT ASKS THAT THIS ADMINISTRATION AND ITS SUPERVISORS INVESTIGATE C/O PEDERSON AND ALL THE DOE SUBORDINATES WHO HELPED CONCOCT THIS DANGEROUS ACT ON THE GRIEVANT, AND THAT ANY AND ALL INVESTIGATIONS BE CONDUCTED PURSUANT TO 42 U.S.C. § 1997e.

**RESOLUTION:**

FURTHER THE GRIEVANT, AT THIS POINT, OBVIOUSLY FEARS RETALIATION BY C/O PEDERSON OR ONE OF HIS CONFEDERATES, AS WELL AS A FEAR OF RETALIATORY TRANSFER TO KEEP THESE CORRUPT ACTS HUSHED UP.

*Vincent T. Neely #305828*
*6-19-23*

(ECF No. 1-1, PageID.20-21.)

While the record reflects that Grievance 1 did not receive a Grievance Identifier number, it also shows that Neely did not take reasonable steps to exhaust the grievance through the three-step process.  (ECF No. 1.)  Neely presented no evidence that he attempted to obtain a Step II appeal form after the time for a Step I response lapsed.  (*Id.*; ECF No. 14; ECF No. 15, ECF No. 16.)  Neely presented no evidence that he filed a Step III appeal form after the time the time for a Step II appeal lapsed.  (ECF No. 1; ECF No. 14; ECF No. 15, ECF No. 16.)  Shown below is

MDOC Step III Grievance Report submitted by the Defendants indicating no Step III appeal was filed in relation to Grievance 1:



**MDOC Prisoner Step III Grievance Report**

1/1/2018 to Present

**Prisoner #:** 308258    **Last Name:** Neely    **First Name:** Vincent

| Step III Rec'd | Grievance Identifier | Grievance Catagory | Facility | Step I Received Date | Resolved | Partially Resolved | Denied | Rejected | Closed | Date Mailed |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | ☐ | ☐ | ☐ | ☐ | ☐ | |

Notes:

(ECF No. 13-3, PageID.159.)

The record also indicates that Neely failed to exhaust his retaliation claim through the June 28, 2023, Misconduct Hearing related to the two misconduct tickets. (ECF No. 1-7, PageID.56.)  At the hearing, ALJ Theut reviewed area of control rules, an area of control diagram, two photos submitted by the hearing investigator, and a memo on the incident from Neely.  (*Id.*)  In the memo, Neely provides information on the location of the search, witnesses, and provides evidence including a diagram of the areas of control.  (ECF No. 13-4, PageID.168-71.)  A single line in the Neely's memo addresses CO Pederson stating the hearing officer should, "Ask them was there a hole in the wall prior to the PC milieu and C/O Pedersen and maintenance supervisor woods damaging the wall."  (*Id.*, PageID.170.)  The memo contains no mention of CO Batho and no mention of retaliatory conduct by either CO.  (*Id.*)  Neely stated during the hearing that he was not guilty, that the area was not in his control, his witnesses did not come to the hearing, and that he declined further statement. (ECF No. 1-7, PageID.56.)  The hearing report reflects that Neely said nothing during

18

his hearing regarding retaliation through false misconduct tickets by COs Pederson or Batho.  (*Id.*)

ALJ Theut found that the facts did not support the charge against Neely and found him not guilty.  (*Id.*)  Neely did not appeal the results of the misconduct hearing.  (*Id.*)  Shown below are portions of the hearing report:



(*Id.*)



(*Id.*)

On July 7, 2023, Neely filed Grievance KCF-2307-457-7F (hereinafter Grievance 2).  (ECF No. 1-1, PageID.63.)  In Grievance 2, Neely says that he was "found not guilty of the misconduct[] reports dates 6-16-2023, following a hearing via web cam," during which he "asked Hearing Investigator Slater for a copy of my Hearing Report and Documents" without success.  (*Id.*)  He states he is "entitled to receive a copy of all documents in the possession of the Department…used as evidence at the Class 1 hearing."  (*Id.*)  There is no mention of Neely's claims of retaliation by COs Pederson or Batho in Grievance 2.  (*Id.*)  The Step I response does not address

the absent misconduct claims, instead stating that because "the grievant was found not guilty on the charge he is not able to follow the appeal process and receive the requested documents for the purpose of an appeal." (*Id.*, PageID.65.)  Grievance 2 and its response are shown below:



(*Id.*, PageID.63.)



(*Id.*, PageID.65.)

Neely did file a Step II appeal of Grievance 2, which was initially rejected for failure to attach a copy of the Step I grievance. (*Id.*, PageID.64.)  Upon rereview the Step II appeal was denied based on Warden Storey's finding that no policy violation occurred. (*Id.*, PageID.67.)  Warden Storey made no mention of retaliation through false misconduct tickets by COs Pederson or Batho. (*Id.*)  No Step III appeal was made in relation to Grievance 2, as shown by the Step III Grievance Report. (ECF

No. 13-3, PageID.159.)  The relevant portion of the Step II appeal response is shown below:

> This Step II respondent finds the Step I response appropriate per the Michigan Department of Correction Hearing Handbook page 37, section C. "For Class I misconduct hearings, due process requires that a prisoner receive, upon request and for purpose of appeal, a copy of their hearing record, except those documents which have been determined to be confidential by the ALJ." Due to the grievant being found not guilty on the charge, he in not able to follow the appeal process and receive the requested documents.
>
> Based on the above finding(s), No policy violation exists.

(ECF No. 1-1, PageID.67.)

Neely filed Grievance KCF-2311-776-28E (hereinafter Grievance 3) on November 11, 2023.  (ECF No. 1-11, PageID.69.)  Grievance 3 does acknowledge that Neely "was written a major misconduct ticket" on June 16, 2023.  (*Id.*)  However, the central claim of Grievance 3 is that Neely "missed work" because of the misconduct tickets and had not received backpay or been reassigned to a new work detail by "classification Church" or "F-Unit P.C. King."  (*Id.*)  Grievance 3 was rejected as untimely and makes no mention of retaliation through misconduct tickets by COs Pederson or Batho.  (*Id.*, PageID.71.)  Neely did not appeal Grievance 3 through Step III as shown by the MDOC Prisoner Step III Grievance Report.  (ECF No. 13-3, PageID.159.)  Grievance 3 and its response are shown below:

> State problem clearly.  Use separate grievance form for each issue.  Additional pages, using plain paper, may be used.  Four copies of each page and supporting documents must be submitted with this form.  The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130.
>
> On 6-16-23, I was written a major misconduct ticket and moved from B-Unit to F-Unit and placed on Non-Bond. On 6-27-23 a Administrative misconduct hearing was held and I was found not guilty of the major misconduct tickets. I was a F-Unit porter prior to these major misconduct being written.
> I've written classification Church (7-5-23; 10-23-23; 11-13-23.) innumerable times concerning being payed for the days that I missed work due to no fault of mines, concerning the major misconduct tickets wrote against me. I spoke with F-Unit P.C. King concerning this issue on several occasions and he sent an e-mail to classification Church to no avail.
> I would like to be back payed from 6-16-23 until the time I was offered another detail.

(ECF No. 1-11, PageID.69.)

FROM:      R. Voorhees / Grievance Coordinator

SUBJECT:   Receipt/Rejection for Step I Grievance.

Your grievance is being rejected as untimely. PD 03.02.130 section Q, clearly states the grievant is to attempt to resolve the issue within two business days, and if not resolved the grievance is to be filed within five business days. This grievance was not filed in a timely manner. The date of incident was 6/16/23, today's date on the grievance is 11/28/23.  This grievance was received in this office on 12/01/23.

KCF 2311  776  28E

(*Id.*, PageID.71.)

In the opinion of the undersigned, Neely failed to properly exhaust his First Amendment retaliation claims against COs Pederson and Batho.  Neely failed to address his retaliation claim in the proper venue for exhaustion, the June 28, 2023 misconduct hearing and documents submitted for review in that hearing.  (ECF No. 1-7, PageID.56; ECF No. 13-4, PageID.168-71.)  Even if a misconduct hearing was not the proper venue, Neely failed to exhaust the grievance process as set out by MDOC. Although Neely discussed his claim in Grievance 1, he failed to appeal Grievance 1 through Step III or make adequate efforts to exhaust.  (ECF No. 13-3, PageID.159.) Neely failed to mention his claim in Grievance 2 and failed to appeal Grievance 2 through Step III.  (*Id.*; ECF No. 1-1, PageID.63 )  Finally, Neely failed to mention his claim in Grievance 3 and failed to appeal Grievance 3 through Step III.  (ECF No. 13-3, PageID.159.)

## B. Fourteenth Amendment Substantive Due Process

In his complaint, Neely asserts that COs Pederson and Batho violated his Fourteenth Amendment due process rights by planting evidence in his area of control and issuing him false misconduct tickets because Neely wrote a grievance concerning their actions.  (ECF No. 1.)

22

In Grievance 1, Neely alleges that COs Pederson and Batho were guilty of "falsifying documents" in relation to the planting of evidence in his area of control. (ECF No. 1-1, PageID.21.)  However, the proper venue for Neely to address claims related to the issuance of false misconduct tickets was the misconduct hearing held on June 28, 2023.  *See Siggers*, 652 F.3d at 693-94.  At the hearing, Neely did not raise the issue of false misconduct tickets by COs Pederson or Bathos.  (ECF No. 1-7, PageID.56.)  Neely also did not raise the issue in his memo prior to the hearing.  (ECF No. 13-4.)  No document in the record suggests that Neely requested a rehearing following his not guilty verdict at the misconduct hearing.  Thus, Neely failed to exhaust Fourteenth Amendment claims related to the issuance of false misconduct tickets.

To properly exhaust his Fourteenth Amendment claims related to the planting of evidence in his area of control, Neely needed to appeal a grievance through Step III of the MDOC appeals process.  *See* MDOC Policy Directive 03.02.130.   In Grievance 1, Neely alleges that COs Pederson and Batho violated his rights by planting evidence in his area of control.  (ECF No. 1-1, PageID.21.)  Neely says that CO Pederson "plant[ed] two (2) metal rods sharpened as weapons and approx. 1 and half to 2 gallons of a brownish, fermented liquid, also known as spud-juice in an area C/O Pederson assumed was the grievant area of control. These items were planted in the wall after C/O Pederson and RUM Batho brought a sledge-hammer into the grievants cubicle and beat out a large hold in the wall with the sledge-hammer."  (*Id.*) Neely states that the "sledge-hammer was used to obfuscate C/O Pederson planting

the weapons and the spud-juice." (*Id.*)  Although Grievance 1 does make the same claims as those in the complaint, it was not appealed through Step III and there is nothing in the record to suggest Neely took adequate efforts to exhaust.  (ECF No. 1; ECF No. 1-1, PageID.21; ECF No. 13-3, PageID.159.)

In Grievance 2, Neely fails to discuss his claim that COs Pederson and Batho planted evidence in his area of control.  (ECF No. 1-10, PageID.63.)  Neely did file a Step II appeal of Grievance 2, however the appeal itself and the response fail to acknowledge his Fourteenth Amendment claim.  (*Id.*, PageID.64-67.)  Neely did not file a Step III appeal of Grievance 2.  (ECF No. 13-3, PageID.159.)

In Grievance 3, Neely also fails to discuss his claim related to the planting of evidence by the Defendants.  (ECF No. 1-11, PageID.69.)  The Step I response makes no mention of the claim and rejects the grievance as untimely.  (*Id.*, PageID.71.)  Neely did not appeal Grievance 3 through Step III.  (ECF No. 13-3, PageID.159.)

In the opinion of the undersigned, Neely has failed to exhaust his Fourteenth Amendment substantive due process claims related to the issuance of false misconduct tickets and to the planting of evidence in his area of control.  Neely failed to properly exhaust his claim related to the issuance of false misconduct tickets through the misconduct hearing as required.  (ECF No. 1-7, PageID.56; ECF No. 13-4.)  Neely failed to appeal any grievance properly through Step III or make adequate efforts to exhaust.  (ECF No. 13-3, PageID.159.)

## C. Regarding the Plaintiff's Sur-Reply

Neely responded to the Defendants' motion for summary judgment on August 7, 2024. (ECF No. 14.)  Defendants replied to Neely on August 20, 2024.  (ECF No. 21.)  On September 26, 2024, Neely filed a sur-reply without leave of the court to do so.  (ECF No. 22.)  Defendants motioned to strike Neely's sur-reply.  (ECF No. 23.)

Rule 7.2(c) of this Court's Local Civil Rules allow for a response to a dispositive motion and then a reply to the response.  W.D. Mich. LCivR 7.2(c).  Under the same rule, "[t]he court may permit or require further briefing."  *Id.*  Neely never requested leave from the Court to file his sur-reply.  Therefore, the undersigned respectfully recommends that the Court grant Defendants' motion (ECF No. 23) to strike Neely's sur-reply (ECF No. 22).

In his sur-reply, Neely asserts that he actually did raise the issue of retaliation during the misconduct hearing held June 28, 2023.  (*Id.*, PageID.225.)  Neely says that the ALJ simply failed to include his retaliation claim in the record of the proceeding.  (*Id.*)  Neely has not made this claim before.  In addition, Neely fails to offer this assertion in the form of an affidavit or verified statement meeting the requirements of 28 U.S.C. § 1746.  *See Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993) (stating a plaintiff may rely on a verified complaint, which has the same force and effect as an affidavit, for purposes of responding to a motion for summary judgment).  Thus, even if the Court considered Neely's sur-reply, the undersigned's analysis would remain the same.

### D. State Law Claims

Neely asserted violations of various MDOC policies and procedures, as well as a state tort law claim.  In determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993).  Ordinarily, when a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *Id.*  Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

If the Court adopts the undersigned's recommendation, it will dismiss all of Neely's federal claims.  The balance of the relevant considerations would therefore weigh against the exercise of supplemental jurisdiction.  As such, the undersigned respectfully recommends that the Court decline to exercise supplemental jurisdiction.

## V.  Recommendation

The undersigned respectfully recommends that this Court grant the Defendants' motion for summary judgment.  It is recommended that the Court dismiss Neely's First Amendment retaliation claims, Fourteenth Amendment substantive due process claims, and his state law claims against Defendant COs

26

Pederson and Batho.  If the Court accepts this recommendation, no claims against the Defendants will remain.[7]


Dated:   November 6, 2024                    /s/ *Maarten Vermaat*
                                                          MAARTEN VERMAAT
                                                          U. S. MAGISTRATE JUDGE


### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).

---

[7]     Plaintiff's motion for partial summary judgment arguing that Defendants failed to raise an adequate defense would be moot.